JONES, Justice:
This is an eminent domain proceeding from the Circuit Court of Covington County, which rendered a judgment of $50,000 for a right-of-way covering 15.26 acres over a tract comprising 98.34 acres. We are affirming the case, provided the appellee desires to enter a remittitur as hereafter provided. If she prefers to have another trial on the issue of damages and does not enter .the remittitur, the case will be remanded for a new trial.
The tract owned by appellee is partly within and partly without the Town of Collins. Approximately 20 acres in the northern portion of the tract is within the corporation limits of the Town of Collins, and the balance is without such limits.
No improvements were situated upon the tract taken in the condemnation proceedings, except a lake covering 1.11 acres, which was or will be destroyed by the construction of the road.
The highway enters the tract at the northwest corner and extends in a southeasterly direction, the south side thereof emerging from appellee’s land at a point approximately 950 feet south of the corporate limits of the town. There are 20.50 acres remaining north of the right-of-way and 62.50 acres south of the right-of-way.
The house, barn, and storehouse of ap-pellee are situated on the 20 acres within the corporate limits and near the eastern side thereof. There was no public road severed by the right-of-way, although some farmroads were. However, the plans of the department called for the construction of ramps on the north and south sides, together with a crossover. Thus appellee upon completion will have access to the four-lane interstate road, for the building of which this right-of-way is acquired. There are no improvements on .the south side of the highway, that being pasture or timberland, except that near the east side is a pit variously called a gravel pit or dirt pit. The land had been used principally *592 for pasture during the fifteen years that the appellee and her recently deceased husband had owned it. The plans for the highway called for cuts and fills of various depths and heights at intervals across the property. There was also a sewer pipe running across what was taken for highway, which sewer pipe had been installed by the city, as we understand. The highway department, in the construction of the road, had built or planned to build a conduit under the highway so that a sewer line might be installed when and if desired, and it also provided at another place on .the highway a conduit for the installation of a water line when and if desired.
The appellee relied heavily upon her belief that the land was suitable for building lots. She had sold three lots in .the northeast corner since they had owned the property, but none had been sold recently for the reason that it was general knowledge the highway was coming through the land. Not knowing exactly at what point the highway would cross, she considered herself not in a position to sell.
Immediately adjacent to the east side of Mrs. Duckworth’s property was a subdivision known as Lakeview Hills Subdivision. The subdivision was sold to the developers on October 31, 1961, at the rate of $175 per acre and the plat therefor filed. The corporation limits had been extended to include it; and since its purchase and opening, which was three or four years prior to this trial, three houses had been built on it. ■ Just north of ap-pellee’s property was what was known as the Bryant Subdivision, which consisted of a total of 30 lots. It was platted and divided for residential purposes about three years prior to the trial. By April 21, 1965, when this suit was instituted, there were four houses constructed in this subdivision.
Adjacent to her property at the northwest was the property of Denvil D. Saulters and wife, which was involved in the case of Mississippi State Highway Commission v. Saulters, 195 So.2d 505 (Miss. 1967). Just to the west of the Saulters property was the Lindsey property, condemned in Mississippi State Highway Commission v. Lindsey, 186 So.2d 194 (Miss. 1966).
There is a great variance between the values and damages shown by the landowner and the appraisers for the State. The various figures of the appraisers were as follows:
BEFORE VALUE AFTER VALUE DAMAGES
J. W.- Morgan $59,000 $47,500 $11,500
Everett Ladner $63,000 $46,200 $16,800
C. Boone $58,000 $43,000 $15,000
The values testified to the landowner and her witness, who was the owner of the Bryant Subdivision, were as follows:
BEFORE VALUE AFTER VALUE DAMAGES
Mrs. Duckworth $126,550 $75,410 $51,140
M. Bryant $116,000 $63,000 $53,000
We know of no way in which the large values given by the landowner and the witness, Mr. Bryant, and also the jury, as evidenced by its verdict, could have been reached unless they were considering the land on a lot basis rather than an acreage basis. It had not been subdivided, and the Town of Collins had an ordinance governing subdivisions which provided for plats, width of streets, square footage to be contained in the lots, and other improvements required. The ordinance provided for *593 payment by the owner of all costs of the following improvements: grading and graveling of streets and alleys, blacktopping, paving, sanitary sewerage system, storm sewer system, water mains, culverts, and bridges.
It is insisted that there was and is a great boom in the Town of Collins. The record contains no census or any other information as to any great increase or decrease in the population in recent years. The only thing to support such a claim is the opening of these two subdivisions, which, according to the evidence, were having houses built upon them at the rate of about one a year.
If the property is suitable for subdivision purposes, the value to be considered at the time of the taking is the value of the tract itself for such purpose and not the value of each of the proposed lots. Where the subdivision actually has been made, then a consideration on the lot basis is proper; but prior to the commencing of the subdivision plans, it is the value of the tract itself for subdivision purposes that is to be considered. 29A C.J.S. Eminent Domain § 160b (1965). As was stated by the Court in the Lindsey case, supra, “[T]here is a limit to the number of residential lots that can be sold and absorbed, so to speak, in the Town of Collins.” And again as stated in the Lindsey case, “The jury in this Court’s opinion failed to take into consideration the tremendous cost of developing a subdivision and failed to consider the limited market for residential lots in the Town of Collins.”
We have considered the evidence and the amount of verdict very carefully, and are convinced a verdict of $50,000 is so grossly excessive as to evince bias, passion and prejudice on the part of the jury. We will offer Mrs. Duckworth, the appel-lee, an option to avoid another trial if she so desires. She may enter within fifteen days from the time the judgment in this case becomes final, a remittitur of $22,500, which will reduce the judgment rendered to $27,500.
The case is affirmed if the appellee will enter the remittitur aforesaid within the time aforesaid; otherwise it is reversed and remanded for a new trial.
GILLESPIE, P. J., and RODGERS, BRADY and INZER, JJ., concur.